**E-FILED**
Thursday, 13 September, 2007  11:46:19 AM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | |
|---|---|
| **DENNY PATRIDGE and JUDY PATRIDGE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )  **Case No. 05-2172** |
| | ) |
| **J.K. HARRIS & COMPANY, BOBBIE** | ) |
| **MICKEY, and LARRY PHILLIPS,** | ) |
| | ) |
| **Defendants.** | ) |

_____

### OPINION
_____

On March 1, 2006, Plaintiffs Denny and Judy Patridge filed their Second Amended Complaint (#30) in this matter alleging breach of contract and various fraud claims against Defendants J.K. Harris & Company, Bobbie Mickey, and Larry Phillips. On June 25, 2007, Defendants filed a Motion for Summary Judgment (#50). After the motion for summary judgment was fully briefed, Defendants filed a Supplement to the Motion for Summary Judgment (#57). The matter is now fully briefed, and for the reasons that follow Defendants' Motion for Summary Judgment and its Supplement are GRANTED.[1]

---

[1] The court wishes to note at the outset that the lawyering in this matter has made deciphering the bases for Plaintiffs' claims, the parties' arguments, and the undisputed facts an arduous task. Under the heading "Undisputed Material Facts" in Defendants' original Motion for Summary Judgment, Defendants simply wrote the word "None." In their Supplement to the Motion for Summary Judgment, Defendants appropriately decided that a statement of undisputed facts may be desirable in an attempt to demonstrate that there are no disputed facts in this matter which would require a trial. Taking Defendants' lead, however, Plaintiffs' counsel decided not to respond to Defendants' statement of undisputed facts in their response to the supplemental motion for summary judgment, nor have Plaintiffs filed a statement of undisputed facts of their own. In addition, Plaintiffs' complaint and responses to the motion for summary judgment and its

FACTS

Plaintiff Denny Patridge operated an insurance business named Patridge Insurance Services. While operating his business, Denny purchased trusts from an entity named the Aegis Company. Denny established separate bank accounts for these trusts, one of which was the Patridge Asset Management Trust, and transferred money earned from his business into these bank accounts. The funds which Denny transferred were not included in his gross income. Denny and his wife, Plaintiff Judy Patridge, received a letter from the IRS in June of 1999 indicating it was going to conduct an audit of Plaintiffs' tax returns. Plaintiffs notified Aegis of the letter, and Aegis supplied Plaintiffs with a letter to send to the IRS in response. Plaintiffs received a second letter from the IRS in August or September of 1999 seeking certain information from Plaintiffs. Aegis again prepared a letter which Denny mailed to the IRS and which did not contain the requested information. On January 27, 2000, Plaintiffs received a Notice of Deficiency from the IRS. Plaintiffs contacted Aegis who put them in touch with David Parker, an attorney. Parker informed Denny that he would handle the matter. On March 10, 2000, Parker wrote to the IRS on behalf of Plaintiffs. Later in the month, the IRS and the United States Treasury Department raided Parker's office and an Aegis office. Parker then informed Plaintiffs that he could no longer represent them.

Plaintiffs then retained the services of J.K. Harris & Company in responding to the Notice of Deficiency received by the IRS. Plaintiffs first met with Craig Carmichael of J.K. Harris on April 14, 2000, in St. Louis, Missouri. A second meeting between Plaintiffs and J.K. Harris occurred on April 20, 2000. At that meeting, Plaintiffs indicated that they did not want to go to Tax Court on the matter

---

supplement are less than concise. While the court was inclined to strike the pleadings and insist the parties start from scratch, the court found it more expedient to proceed despite these infirmities.

-2-

because Denny knew of another individual who had a similar trust to the one held by Denny and that person lost in Tax Court. Denny testified that Defendant Bobbie Mickey, an executive vice president of J.K. Harris, told him that he would get an audit reconsideration and there was no discussion of any other options at that point. Mickey informed Denny that he could go to audit reconsideration and not have to go to Tax Court.

Plaintiffs also signed an Engagement Agreement with J.K. Harris regarding the work J.K. Harris would perform for Plaintiffs. The Engagement Agreement states, "We will represent you with the IRS in regard to your income tax audit for the year(s) '96, '97 <98>." The word "(Appeal)" was also written below this line. The Engagement Agreement further indicates, "Review Business Trust - Appeal IRS Decision on Trust (If Applicable)," "Prepare for Audit Appeal," "Respond to IRS by 4/27/00 - Notify of P.O.A.", and "Send 433A/B for Possible Pre-Qualification of OIC @ end of appeals." The Agreement states that its purpose is "to confirm the understanding of the terms of our engagement and the nature and limitations of the services J.K. Harris & Company will provide." In exchange for these services, Plaintiffs were to pay J.K. Harris $13,000. The contract also had the acronym "E.M.T." written in the margin. Denny testified in his deposition that this stood for "Emergency Management Team." Denny further testified that he understood the term "Review Business Trust" to mean that J.K. Harris would review the trust documents relative to the Patridge Asset Management Trust to determine whether it is legitimate. Denny also indicated that he understood the term "Prepare for Audit Appeal" was referring to seeking audit reconsideration. Denny further understood the line regarding OIC to refer to an offer of compromise with the IRS, but Denny testified the IRS never allowed Plaintiffs to do this.

Judy testified in her deposition that Larry Phillips, an employee of J.K. Harris, met with her and Denny three or four times to get documentation for the 1996 and 1997 calendar years. On July

-3-

17, 2000, Phillips wrote a letter to Plaintiffs indicating he had a "discussion with Craig, manager at the IRS Champaign office."  The letter indicated "Craig advised me to have a correct return for the years involved - for both the 1040 & 1120, excluding the trust returns."  The letter further indicated that Craig wanted a letter from Plaintiffs addressed to William Thompson, District Director for the IRS, stating that they are requesting an audit reconsideration for the years 1996 and 1997, providing a "detailed explanation of why the original request for an audit was not honored; circumstances surrounding your decision not to comply; details of any professional advice that you relied on in making these choices," and "reasons you now feel that the audit should be re-opened at this time." Denny testified that Phillips also informed him in the summer of 2000 that the IRS would not accept the Aegis trusts.  Denny wrote a letter on July 11, 2000, to the United States Tax Court, at the suggestion of Phillips, which stated, "We do not wish to petition the tax court for the deficiencies proposed for 1996-1997 personal returns for Denny and Judy Patridge.  This is a request for audit reconsideration . . . ."   On September 8, 2000, Phillips sent a letter to Denny which stated:

> After a discussion with Bobbie Mickey, we feel that corrected tax returns for the years 1996 and 1997 could be prepared at our corporate office in a much more professional manner than doing them by hand in Illinois.  Another thought considered was since we have already assembled all the numbers for those years and placed them in separate folders they could be FED-X or UPS to our office very safely.  I will make copies of the contents and return the originals to you.

> I know that you are not in any rush to have this done, but the sooner we proceed in this direction, the sooner we will get collection out of the loop.  Granted, once we file the changed returns, they will be processed and the changed assessments will be due. At that time, you can decide the avenue to take.  A payment plan coupled with an

Offer and Compromise can be entertained or just the Offer.  All this will allow

additional time for you to get your finances in order.

Denny testified that he got a phone call from Mickey in the fall of 2000 about the possibility of filing

amended returns.  On October 2, 2000, Phillips sent a fax to Denny which stated, "Long time no hear.

Have you changed any plans of sending me the tax data for 1996 & 1997?  Please advise."  Denny

did not respond to the fax because he was advised by Brent Winters, an attorney who advised Denny

regarding his situation, and Rivera, an attorney retained by Denny in the fall of 2000, not to file

amended tax returns.

On September 1, 2004, Plaintiff Denny Patridge was charged in a seven count superseding

indictment in this court with tax evasion, filing a false tax return, wire fraud, and money laundering.

Specifically, the indictment charged Denny with the following counts: (1) filing a false tax return on

or about April 12, 1999, for the calendar year 1998, in violation of 26 U.S.C. § 7206(1); (2) tax

evasion based upon Denny's actions beginning in July 2000 until the date of the return of the

indictment to willfully evade or attempt to evade payment of personal income taxes due and owing

for the 1996 and 1997 calendar years, in violation of 26 U.S.C. § 7201; (3) tax evasion based upon

Denny's actions in 1999 and 2000 to willfully evade or attempt to evade a large part of his personal

income tax due and owing for the 1999 calendar year, and in failing to file an individual income tax

return, in violation of 26 U.S.C. § 7201; (4) wire fraud based upon Denny's actions in 2000, which

included wiring approximately $200,000 in funds in October 2000, whereby he set up a system to hide

his assets from the Internal Revenue Service (IRS) by moving his money offshore to an account under

his control but not under his name, in violation of 18 U.S.C. § 1343; (5) wire fraud based upon

Denny's actions in October 2000, which included wiring approximately $100,000 in funds, to

fraudulently prevent the IRS from obtaining a first lien on his real estate, in violation of 18 U.S.C. §

1343; (6) money laundering based upon Denny's actions in October 2000 of transferring funds to hide them from the IRS yet make the funds available to Denny for use at his direction, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and (7) money laundering based upon Denny's actions in October 2000 of transferring funds with the intent to engage in conduct constituting the evasion of payment of taxes, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii).

On June 30, 2005, following a jury trial, Denny was found guilty of all counts of the indictment with the exception of Count I. This court entered a judgment of conviction as to Counts II through VII. On September 25, 2006, Denny was sentenced to a term of sixty months' imprisonment on Count II through VII and was ordered to pay restitution in the amount of $168,219.50. Denny filed a Notice of Appeal regarding his criminal convictions on October 2, 2006, and that appeal remains pending with the Seventh Circuit Court of Appeals.

ANALYSIS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000), quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in

-6-

favor of that party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin

Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).  Speculation, however, is not

the source of a reasonable inference.  See Burwell, 213 F. Supp. 2d at 929, citing Chmiel v. JC Penney

Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998).  Therefore, the nonmoving party must "set forth

specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  Summary

judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it

has that would convince a trier of fact to accept its version of events."  Koszola v. Bd. of Educ. of City

of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004).  If the evidence presented is "merely colorable" or

is not "significantly probative," summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

Plaintiffs first bring a claim against Defendants for breach of contract.  Plaintiffs allege that

Defendants breached the terms of the Engagement Agreement with Plaintiffs resulting in damages

related to Plaintiffs' tax liability to the IRS and Denny's criminal convictions.  The Engagement

Agreement states, "We [J.K. Harris] will represent you with the IRS in regard to your income tax audit

for the year(s) '96, '97 <98>."  The Engagement Agreement further indicates that J.K. Harris would

"Prepare for Audit Appeal."  The parties disagree as to whether this term means that J.K. Harris would

represent Plaintiffs in the United States Tax Court.

Under Illinois law,[2] "'the determination of whether a contract is ambiguous is a question of

law for the court.'"  Space Center Tysons, Inc., v. Opus N. Corp., 2004 WL 603606 at *12 (N. D. Ill.

2004), quoting Shields Pork Plus, Inc. v. Swiss Valley Ag. Serv., 767 N.E.2d 945, 949 (Ill. App. Ct.

2002).   "'A contract is ambiguous only if the language employed is susceptible of different

constructions when read in its plain and ordinary meaning.'"  Cromeens, Holloman, Sibert, Inc. v. AB

_____

[2]  The parties do not dispute that Illinois law governs the claims in this action.

<u>Volvo</u>, 349 F.3d 376, 394 (7th Cir. 2003), <u>quoting</u> <u>Althoff Indus., Inc. v. Elgin Med. Ctr., Inc.</u>, 420 N.E.2d 800, 803 (Ill. App. Ct. 1981).  "If the court determines that contract language is ambiguous, 'extrinsic evidence is admissible to determine the parties' intent and interpretation of the language is a question of fact.'" <u>Space Center Tysons</u>, 2004 WL 603606 at *12, <u>quoting</u> <u>Installco Inc. v. Whiting Corp.</u>, 784 N.E.2d 312, 320 (Ill. App. Ct. 2002).  However, "[t]he meaning of the contract can be determined by the court as a matter of law if the parties' intent may be determined from undisputed facts."  <u>C.A.M. Affiliates, Inc. v. First Am. Title Ins. Co.</u>, 715 N.E.2d 778, 782 (Ill. App. Ct. 1999).

Assuming that the term "prepare for audit appeal" is ambiguous, Plaintiffs have presented no evidence to indicate that J.K. Harris was to do anything but seek audit reconsideration.  Denny testified that he understood the term "prepare for audit appeal" referred to audit reconsideration.  The fact that the parties intended to obtain audit reconsideration rather than proceeding in Tax Court is further evidenced by the letter sent from Phillips to Plaintiffs on July 17, 2000.  In that letter, Phillips indicates he had a discussion with the manager at the IRS Champaign office who wanted a letter from Plaintiffs addressed to the District Director for the IRS stating that Plaintiffs are requesting an audit reconsideration for the years 1996 and 1997.

Nevertheless, Plaintiffs argue that the contract required Defendants to represent them in Tax Court because the acronym "EMT," which stands for Emergency Management Team, was written in the contract.  Plaintiffs argue this evidences intent on the part of J.K. Harris to represent them in Tax Court because the deadline for appealing to the Tax Court was imminent.  However, Defendants have presented uncontroverted evidence that this is not what the parties intended.  Denny testified in deposition that he and Judy informed Phillips at the April 20, 2000, meeting that they did not want to go to Tax Court on the matter because Denny knew of another individual who had a similar trust to the one held by Denny and that person lost in Tax Court.  In fact, Denny wrote a letter to the Tax

-8-

Court saying Plaintiffs did "not wish to petition the tax court." While Plaintiffs in retrospect may wish that they had contracted with another entity to present their case before the Tax Court, the undisputed evidence indicates that the parties to the Engagement Agreement did not intend representation in Tax Court to be part of the contract. Accordingly, Plaintiffs' breach of contract claim must fail.

Plaintiffs next bring a claim against J.K. Harris and Defendant Mickey for fraud, arguing that they "led the Patridges to believe that J.K. Harris would in fact represent the Patridges in tax court by denoting their case was an 'emergency' and belonged in the 'EMT' section" but did not inform Plaintiffs that they were unable to represent them in the Tax Court. To sustain a claim of fraud under Illinois law, Plaintiffs must demonstrate "'(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.'" Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332, 1341 (7th Cir. 1992), quoting Cotter v. Parrish, 520 N.E.2d 1172, 1175 (Ill. App. Ct. 1988); see also Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 841 (7th Cir. 2007). Plaintiffs are unable to survive summary judgment because they have failed to present any evidence as to the first element of this cause of action. Plaintiffs have failed to present any evidence Defendants ever represented to Plaintiffs that they were capable of representing them in Tax Court. In addition, Plaintiffs have presented no evidence that Plaintiffs relied on any statement that Defendants would represent them in Tax Court. Rather, the undisputed deposition testimony of Denny indicates that Plaintiffs informed Defendants that they did not want to go to Tax Court. Accordingly, summary judgment is appropriate on this claim.

Plaintiffs further bring a claim of fraud against J.K. Harris and Defendant Mickey, alleging

Mickey falsely informed Plaintiffs that he could get Plaintiffs' 1996 and 1997 returns back into audit, and falsely stated that "everything had been taken care of and not to worry about it" and Plaintiffs should "go on vacation and have a good time" on May 3, 2000.   In addition, Plaintiffs bring a fraud claim against Defendant Phillips for failing to present Plaintiffs' issues before the Tax Court and hiding information from Plaintiffs with regard to "whether Plaintiffs owed and should have paid the amounts at issue in the Notices of Deficiencies for 1996 and 1997."

Based upon the undisputed facts before this court, Plaintiffs' additional fraud claims must fail. There is no evidence to support Plaintiffs' assertion that J.K. Harris falsely represented to them that they did not  need to pay the amounts indicated in the Notices of Deficiency or that J.K. Harris could get their tax returns back into audit with no further action required from Plaintiffs.   Rather, the undisputed evidence indicates the contrary.  The July 2000 letter to Plaintiffs from Phillips indicated "Craig advised me to have a correct return for the years involved - for both the 1040 & 1120, excluding the trust returns."  J.K. Harris, by Phillips and Mickey, attempted to get Plaintiffs to have amended returns completed as requested by Craig, but Plaintiffs were uncooperative.  On September 8, 2000, Phillips sent a letter to Denny which stated:

> After a discussion with Bobbie Mickey, we feel that corrected tax returns for the years
>
> 1996 and 1997 could be prepared at our corporate office in a much more professional
>
> manner than doing them by hand in Illinois.  Another thought considered was since
>
> we have already assembled all the numbers for those years and placed them in separate
>
> folders they could be FED-X or UPS to our office very safely.  I will make copies of
>
> the contents and return the originals to you.

Denny testified that he got a phone call from Mickey in the fall of 2000 about the possibility of filing amended returns.  On October 2, 2000, Phillips sent a fax to Denny which stated, "Long time no hear.

Have you changed any plans of sending me the tax data for 1996 & 1997?  Please advise."  Denny did not respond to the fax because he was advised by Brent Winters and his attorney, Rivera, not to file amended tax returns.  Accordingly, because Plaintiffs have failed to introduce any evidence of false statements made by Defendants, their claims for fraud must fail.

IT IS THEREFORE ORDERED:

(1)  Defendants' Motion for Summary Judgment (#50) and Supplementary Motion for Summary Judgment (#57) are GRANTED.

(2) The final pretrial conference scheduled in this matter for October 5, 2007, at 1:30 p.m. and the jury trial scheduled to begin October 15, 2007, are VACATED.

(3) This case is terminated.

ENTERED this  13th  day of September, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE